IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANIBAL MELENDEZ, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 04-1537-SLR |
| | : | |
| THOMAS CARROLL, | : | |
| | : | |
| Warden, | : | |
| | : | |
| Respondent. | : | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, the respondent states the following in response to the petition for a writ of habeas corpus:

In April 2002, shortly before the start of his capital murder trial, Anibal Melendez pled guilty in the Superior Court to second degree murder as a lesser included offense of first degree murder, second degree assault, possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited. In June 2002, the court sentenced Melendez to a total of 48 years in prison. The conviction stemmed from Melendez's ambush-style murder of Andre Mercado in which Melendez fired multiple gunshots into Mercado's car, killing him and injuring his passenger Jasmine Pizzaro. Melendez did not file a direct appeal of the guilty plea or sentence.[1] *See generally State v.*

---

[1] Melendez could have filed a direct appeal. *See, e.g.*, *Sullivan v. State*, 636 A.2d 931 (Del. 1994).

*Melendez*, ID No. 0104020056 (Del. Super. Dec. 19, 2003) (included in the appellant's appendix to the opening brief in No. 21, 2004) (hereinafter "Super. Ct. Op.").

In September 2002, Melendez filed *pro se* in the Superior Court a motion for reduction of sentence. After directing the State to respond, the court denied the motion in December 2002. In January 2003, Melendez sought post-conviction relief under Criminal Rule 61. Defense counsel filed an affidavit on June 2, 2003 and a supplemental affidavit on June 19, 2003. Upon receipt of the State's response and Melendez's reply brief, the Superior Court denied post-conviction relief in a 34-page opinion dated December 19, 2003 (Super. Ct. Op). On appeal, the decision was affirmed by the state supreme court. *Melendez v. State*, No. 21, 2004, 2004 WL 1965650 (Del. Aug. 25, 2004).

Facts

As summarized by the Superior Court during the sentencing proceeding, Melendez murdered Mercado after waiting in ambush by firing multiple gunshots into the Mercado's car. During the attack, Melendez also injured Pizzaro, a passenger in Mercado's car. Melendez and Mercado were once very close and referred to each other as "brother." While Melendez was in Puerto Rico avoiding a capias for a violation of probation, he entrusted the care of his Mercedes-Benz to Mercado. Upon return, Melendez discovered equipment had been removed from the car. Melendez was furious about the condition of the vehicle, and the pair had a falling-out. Over the course of several months, physical altercations transpired between Melendez and members of Mercado's family. Super. Ct. Op. at 9 n. 31 (citing B30-31).[2]

---

[2]"B" herein refers to the Appendix to the State's Answering Brief in *Anibal Melendez v. State*, No. 21, 2004.

Melendez then planned extensively and methodically to kill Mercado. Melendez obtained a semi-automatic machine gun, ammunition, and gloves. As part of a getaway plan, Melendez stole a vehicle intending to burn it after the attack. He ascertained where Mercado was parked on the night of the killing and drove past the location repeatedly. Dressed in black, Melendez parked across the street and lay in wait for between 10 and 20 minutes for Mercado to appear. Melendez then fired multiple gunshots into Mercado's car, killing him and injuring his passenger. *Id.*

In a calculated effort aimed at avoiding detection, Melendez wiped the gun clean of fingerprints and also cleaned the remaining bullets. Melendez abandoned the stolen vehicle and, as planned, set it ablaze. He also discarded the gun and his clothes and then took a bath in an effort to destroy any remaining evidence. Ultimately, Melendez sought to compel at least one witness not to cooperate with police by threatening her and her children. Melendez also requested someone he knew to fabricate an alibi. *Id.*

The Superior Court judge recounted the extensive planning which led to Melendez's execution-style killing of Mercado prior to imposing sentence. The court observed that the chilling details of the homicide supported defense counsel's conclusion that there existed a "substantial chance" that a penalty phase would have resulted in the imposition of a death sentence. As noted by the Superior Court, that conclusion expressed by defense counsel to Melendez was "certainly reasonable and warranted." And the court also explained that the substantial planning associated with the murder informed why the court sentenced Melendez closer to the maximum sentencing range as opposed to the minimum. *Id.*

Melendez pled guilty after lengthy consultations with both defense counsel and with his family. At the sentencing hearing, Melendez thanked his two defense attorneys "who have done the very best job in representing me" and acknowledged the "attentiveness they have been giving my case." (B28, 41). Melendez's family had retained an attorney from Puerto Rico to assist in preparations for the possibility of a penalty phase, whom local counsel described as an "internationally regarded lawyer." (B38). Melendez acknowledged his guilt for the homicide in open court and pled guilty out of a sense of remorse for Mercado and his family, with whom he had once been very close. (B20-21, 29). And by pleading guilty to the lesser included offense of second degree murder, Melendez avoided not only a possible death sentence, but also a mandatory sentence of life in prison without possibility of parole upon conviction for first degree murder.

## Discussion

In the petition, Melendez presents a single claim: that he received constitutionally ineffective assistance of counsel during the plea negotiation process because counsel failed to disclose a conflict of interest. *See generally* D.I. 2; D.I. 2 at 1 (summary of defendant's allegation). Melendez presented the claim in the state post-conviction appeal, and thus state remedies have been exhausted. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Federal habeas review in this case is subject to the terms of the Antiterrorism and Effective Death Penalty Act of 1996. *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Revised § 2254 restricts the scope of collateral review of convictions and sentences

for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see, e.g., Price v. Vincent*, 538 U.S. 634 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 21-22 (2002); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). The issue here is thus whether the decision of the state supreme court was contrary to, or involved an objectively unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000).

The gist of Melendez's claim is that due to deficient representation by two defense attorneys, his guilty plea was not knowing and voluntary such that the Superior Court should have permitted him to withdraw the plea and proceed to trial. In that event, Melendez would not only again face the first degree murder and other charges in the indictment, but also be exposed to a possible sentence of death. In order to prevail on a claim of ineffective assistance of counsel, Melendez was required to allege and establish facts meeting the test of *Strickland v. Washington*, 466 U.S. 668, 695 (1984): (1) that counsel's actions fell below an objective standard of reasonableness, and (2) that there exists a reasonable probability

that, but for counsel's unprofessional errors, he would not have pled guilty and would have prevailed at trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *United States v. Brown*, 991 F.2d 1162 (3d Cir. 1993). Melendez must allege not only the errors of counsel, but how these errors undermined his decision to plead guilty. *See Hill*, 474 U.S. at 60.

The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised § 2254(d). *E.g.*, *Woodford*, 537 U.S. at 22; *Williams*, 529 U.S. at 390; *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001); *Johnson v. Carroll*, 327 F. Supp. 2d 386, 395 (D. Del. 2004). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: performance deficiency and prejudice to the defense. *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." In evaluating defense counsel's performance, a reviewing court should also "eliminate the distorting effects of hindsight," and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In this case, the decision of the state courts was not an unreasonable application of the well-settled two-part *Strickland* framework.

Specifically, Melendez alleges only that one of his defense attorneys had a conflict of interest because he was an acquaintance of Pizzaro's mother. (D.I. 2). Notably, Melendez is otherwise silent as to any complaint about co-counsel and does not allege that co-counsel's representation was tainted or otherwise deficient. By way of background, defense counsel explained that, prior to the entry of the guilty plea, he was unaware of the relationship between Pizzaro, the second victim of Melendez's shooting, and Pizzaro's mother. The

matter came to light when defense counsel saw Pizzaro's mother in the hallway of the courthouse subsequent to the plea hearing. Counsel promptly informed Melendez of the acquaintanceship. Counsel represented unequivocally to Melendez, and later in the affidavit submitted to the state courts (B34-41), that he did not know Pizzaro herself personally. Defense counsel discussed the issue with Melendez on a visit specifically for that purpose. Melendez agreed that the matter was of minor significance, particularly because the assault charge involving Pizzaro was not the lead charge. Defense counsel made the matter of record during the sentencing proceedings, including documentation with materials in the defense sentencing report submitted to the Superior Court. Melendez, fully aware of the issue, nevertheless remained silent on the point at sentencing. Melendez also directed remarks expressing remorse to Pizzaro during the sentencing hearing, which further revealed the matter was a non-issue to him and that his plea was entered voluntarily and knowingly. *See* Super. Ct. Op. at 27-29; B28-29, 46.

As the temporal progression of Melendez's case facially reveals, there was no conceivable prejudice to Melendez's decision to plead guilty: counsel was not even aware of the acquaintanceship prior to the entry of Melendez's plea, a point emphasized by the Superior Court. Super. Ct. Op. at 29. And it was during that time frame, prior to the plea, in which the vast majority of counsel's representation occurred. Melendez was aware of the matter at sentencing but chose not to advance the point together with his other remarks to the court. Thus, any claim based on this subject matter was expressly waived. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Further, Melendez told the Superior Court during his plea colloquy that he was satisfied with defense counsel's representation and that he

voluntarily pled guilty due to concern for Mercado's family and to avoid the death penalty.

As correctly determined by the state courts, by pleading guilty, Melendez expressly acknowledged that he waived his right to present a defense or call witnesses on his behalf. Melendez's written plea agreement and T.I.S. guilty plea form, both of which he signed, identified the charges to which he pled guilty and the potential sentence for each charge. *See* Super. Ct. Op. at 13-14. On his guilty plea forms, Melendez answered: that he freely and voluntarily agreed to plead guilty to the charges listed on his plea agreement; that he was not promised anything not stated in his written plea agreement; that no one, including his attorneys, threatened or forced him to enter his guilty plea; and that no one promised him what his sentence would be. *See id.* at 14 & n. 50  Melendez also said that he understood and waived the following rights, including: the right to a jury trial; the right to be presumed innocent; the right to hear and question witnesses; the right to present evidence in his defense; the right to testify or not to testify; and the right to appeal to a higher court. Melendez also said that he was satisfied with defense counsel's representation and that his attorneys had fully advised him of his rights and the result of his guilty plea. Melendez's comments at the sentencing hearing show that Melendez fully recognized and appreciated defense counsel's zealous and extensive efforts during the representation. (B28). He described defense counsel as friends and thanked them for their assistance. The Superior Court confirmed the voluntary nature of the plea at Melendez's guilty plea hearing. (B16-21). Melendez does not allege, and the record does not reveal, any disability which prevented him from understanding defense counsel, the Superior Court judge at his plea colloquy, or the forms which he signed.

The Superior Court aptly observed that "the record strongly indicates that the defendant's attorneys were very professional, prepared and diligent in their zealous representation of Melendez, and this finding is confirmed by this Court's observance of counsel's conduct throughout this case." Super. Ct. Op. at 29. On this specification of ineffectiveness, therefore, the state courts reasonably applied *Strickland's* well-settled two-part test and rejected any notion that defense counsel's representation was clouded by a conflict of interest due to his acquaintanceship with Pizzaro's mother. Melendez established neither performance deficiency nor prejudice within the meaning of *Strickland*, and thus the rejection of Melendez's claim by the state courts was not an unreasonable application of federal law within the meaning of § 2254(d).

In sum, the state courts' rejection of Melendez's complaint about defense counsel's performance was consistent with clearly established legal principles and was a reasonable application of those principles to the facts in this case. As a result, by the terms of § 2254(d)(1), Melendez's claims do not provide a basis for federal habeas relief. *See Hartey v. Vaughn*, 186 F.3d 367, 373 (3d Cir. 1999).

<u>Conclusion</u>

Based upon the Superior Court docket sheet, it appears that the transcripts of Melendez's preliminary hearing, office conference of August 31, 2001, proof positive hearing, plea hearing and sentencing hearing have been prepared. In the event that the Court directs production of any other transcript, the respondent cannot state with specificity when the transcript could be produced, but reasonably expects that production would take 90 days from the issuance of any order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/_____
Thomas E. Brown
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
Del. Bar ID#  3278
*ThomasE.Brown@state.de.us*

Date: May 18, 2005

# CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of this Court, hereby certifies that on May 18, 2005 he caused to be electronically filed the attached document (Answer) with the Clerk of the Court using CM/ECF. I hereby certify that on April 22, 2005 I have also caused to be mailed by first class U.S. Mail two copies of the document to the following non-registered participant, the petitioner:

   Anibal Melendez (No. 00337929)
   Delaware Correctional Center
   1181 Paddock Road
   Smyrna, DE 19977.

/s/
Thomas E. Brown
Deputy Attorney General
Del. Dept. of Justice

Counsel for Respondent

Date: May 18, 2005