IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANIBAL MELENDEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civ. No. 04-1537-SLR |
| ) | |
| THOMAS CARROLL, ) | |
| Warden, ) | |
| ) | |
| Respondent. ) | |

Anibal Melendez.  Pro se petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

Dated: January 5, 2006
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

Petitioner Anibal Melendez is an inmate in custody at the Delaware Correctional Institution in Smyrna, Delaware. Before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) The State has filed its answer that habeas relief is not warranted. For the reasons that follow, petitioner's application will be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner pled guilty to murdering Andre Mercado. As summarized by the Superior Court during the sentencing proceeding, petitioner and Mercado were once very close friends. Petitioner fled to Puerto Rico to avoid a capias for a violation of probation, and he entrusted the care of his Mercedes-Benz to Mercado. When petitioner returned, he discovered equipment had been removed from the car. The pair had a falling out and, over the course of several months, physical altercations transpired between petitioner and members of Mercado's family.

During this time period, petitioner extensively planned to kill Mercado. He obtained a semi-automatic machine gun, ammunition, and gloves. Petitioner stole a car as part of a getaway plan, and intended to burn it after the attack. On the night of the murder, petitioner discovered where Mercado was parked and repeatedly drove by the location. Dressed in black,

petitioner parked across the street and lay in wait for ten to twenty minutes for Mercado to appear.  Petitioner then fired multiple gunshots into Mercado's car, killing Mercado and injuring his passenger, Jasmine Pizzaro.

Petitioner wiped the gun clean of fingerprints and also cleaned the remaining bullets.  He abandoned the stolen vehicle and, as planned, set it on fire.  Petitioner also discarded the gun and his clothes and then took a bath in an effort to destroy any remaining evidence.

In April 2002, shortly before the beginning of his capital murder trial, petitioner pled guilty in the Superior Court to second degree murder (as a lesser included offense of first degree murder), second degree assault, possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited.  The Superior Court sentenced him to a total of forty-eight (48) years of incarceration at Level V.  Petitioner did not file a direct appeal of the guilty plea or sentence.  See generally State v. Melendez, 2003 WL 23095688 (Del. Super. Ct. Dec. 19, 2003).

In September 2002, petitioner filed in the Superior Court a pro se motion for reduction of sentence.  The Superior Court denied the motion.  Then, in January 2003, petitioner filed in the Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, alleging ineffective

assistance of counsel. After reviewing defense counsel's affidavit and supplemental affidavit, the State's response, and petitioner's reply brief, the Superior Court denied the Rule 61 motion as meritless. Melendez, 2003 WL 23095688, at *8. The Delaware Supreme Court affirmed the decision. Melendez v. State, 2004 WL 1965650 (Del. Aug. 25, 2004).

### III. GOVERNING LEGAL PRINCIPLES

#### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." Woodford v. Garceau, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); Woodford, 538 U.S. at 206.

#### B. Exhaustion

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional

4

circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim the to the state's highest court, either on direct appeal or in a post-conviction proceeding. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

### C. Standard of review under AEDPA

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in § 2254(d). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 125 S.Ct. 2456 (2005). Section 2254(d) only permits federal habeas relief when the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El, 537 U.S. at 341 (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Two attorneys represented petitioner throughout his criminal proceeding, and petitioner's federal habeas claims stem from the representation provided by one his attorneys, Mr. David Facciolo, Esquire. Petitioner asserts that: (1) Mr. Facciolo provided ineffective assistance during the plea process because of a conflict of interest; and (2) the sentencing court's failure to investigate the conflict of interest warrants automatic reversal

of his conviction.  See generally D.I. 2.

### A. Ineffective Assistance of Counsel Claim

Petitioner presented his ineffective assistance of counsel claim to the Delaware Supreme Court on post-conviction appeal, thereby exhausting state remedies. The Delaware Supreme Court denied the claim on the merits. Consequently, federal habeas relief will only be warranted if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law.

The "clearly established Federal law" which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003). To prevail on a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must demonstrate both that: (1) counsel's performance fell below an objective standard of reasonableness measured under prevailing professional norms; and (2) counsel's deficient performance actually prejudiced the petitioner's case; in other words, there is a reasonable probability that, but for counsel's faulty performance, he would have decided to proceed to trial. Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985); Strickland, 466 U.S. at 690; Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). In order to sustain an ineffective assistance of counsel claim, a

petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells v. Petsock, 941 F.2d 253, 259-260; Dooley, 816 F.2d at 891-92. Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

The Sixth Amendment's right to effective assistance of counsel also includes the right to counsel's undivided loyalty. Wood v. Georgia, 450 U.S. 261, 271 (1981); Strickland, 466 U.S. at 692. If counsel "actively represented conflicting interests and an actual conflict of interest adversely affected the lawyer's performance," then Strickland's prejudice requirement will be presumed. Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980); Hess v. Mazurkiewicz, 135 F.3d 905, 910 (3d Cir. 1998). However, if a petitioner can only establish the existence of a potential conflict of interest, he will have to demonstrate prejudice in order to prove counsel was ineffective. Hess, 135 F.3d at 910.

In his habeas petition, petitioner claims that Mr. Facciolo operated under a conflict of interest during the plea negotiation process because he was acquainted with Ms. Pizzaro's (the other victim) mother. In his state collateral proceedings, the Superior Court viewed the instant conflict of interest claim as

presenting only a potential conflict of interest, not an actual conflict of interest. The state court then denied the claim because petitioner failed to demonstrate the requisite prejudice under Strickland. Melendez, 2003 WL 23095688, at *8. On appeal, the Delaware Supreme Court held that there was no actual conflict of interest and affirmed the Superior Court's decision. Additionally, the state supreme court held that, even if there were an actual conflict, the conflict arose after petitioner entered his guilty plea and, therefore, could not have adversely affected counsel's representation during the plea proceedings. Melendez, 2004 WL 1965650, at *2.

An actual conflict of interest occurs "when, during the course of the representation, the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" Winkler v. Keane, 7 F.3d 304, 307 (2$^d$ Cir. 1993)(quoting Cuyler, 446 U.S. at 356 n.3). Although the Third Circuit has never explicitly held that defense counsel's relationship with a member of the victim's family constitutes an actual conflict of interest, it has held that an actual conflict may arise out of personal interests of counsel that were 'inconsistent, diverse or otherwise discordant' with those of his client.[1] Government of Virgin Islands v. Zepp, 748

---

[1] In Mickens v. Taylor, 535 U.S. 162 (2002), the United States Supreme Court noted that Cuyler was a multiple representation case, and stated that it remains an open question

9

F.2d 125, 135 (3d Cir. 1984); but see Kirkpatrick v. Butler, 870 F.2d 276, 284 (5th Cir. 1989)(holding that "[a]bsent simultaneous, active representation of an interested party . . . [f]riendship with and past representation of members of a victim's family does not preclude an attorney from representing the defendant when, as here, the attorney revealed his relationship to the defendant and the court.").

Even presuming, as did the Delaware Supreme Court, that an actual conflict of interest existed in petitioner's case, petitioner cannot show that the conflict adversely affected Mr. Facciolo's performance during the plea process because Mr. Facciolo did not know that Ms. Pizzaro was the daughter of his acquaintance until after petitioner entered his plea. Further, petitioner clearly stated during his plea colloquy that he was satisfied with both attorneys' representation and that he voluntarily pled guilty to avoid the death penalty and out of concern for Mercado's family. These "declarations in open court carry a strong presumption of verity," Blackledge v. Allison, 431 U.S. 63, 73-74 (1971), and his present contention does not rebut that presumption.

Accordingly, the court concludes that the Delaware Supreme

---

as to whether Cuyler should be extended to other types of conflict of interest cases. The Third Circuit, however, has expressly extended Cuyler to other types of conflict of interest cases. Zepp, 748 F.2d at 135.

Court's denial of petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of established Federal law pertaining to conflicts of interest and ineffective assistance of counsel.

### B. Automatic Reversal Claim

Mr. Facciolo continued to represent petitioner during the sentencing hearing. The State and Mr. Facciolo's Rule 61 affidavit both claim that Mr. Facciolo informed the sentencing court of Mr. Facciolo's acquaintance-like relationship with Ms. Pizzaro's mother by noting it in a footnote in Mr. Facciolo's sentencing memorandum to the sentencing court. Petitioner alleges that the sentencing court was thereby put on notice of a potential conflict of interest, and because the sentencing court failed to inquire into the conflict, his conviction should be automatically reversed pursuant to Holloway v. Arkansas, 435 U.S. 475 (1978).

Although petitioner presented this claim to the Delaware Supreme Court on post-conviction appeal, the state court did not adjudicate the claim on its merits. See Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004)(a state court opinion which does not even mention a federal constitutional claim does not constitute an adjudication on the merits)(citing Smith v. Digmon, 434 U.S. 332, 333 (1978)). Therefore, the pre-AEDPA standard of

review applies, and the court will review the claim de novo.[2] See Holloway, 355 F.3d at 718-19.

In Holloway, the United States Supreme Court "created an automatic reversal rule where counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." Mickens v. Taylor, 535 U.S. 162, 168 (2002). However, this automatic reversal rule does not apply to petitioner's situation because the alleged conflict of interest did not involve Mr. Facciolo's concurrent representation of multiple defendants. Even if, perchance, the automatic reversal rule could apply in petitioner's case, automatic reversal is inappropriate because neither Mr. Facciolo nor petitioner objected to Mr. Facciolo's continued representation at the sentencing hearing. Further, petitioner describes the conflict as a possible conflict of interest (D.I. 2, at 14), and Holloway's automatic reversal rule only applies to actual conflicts of interest. Mickens, 535 U.S. at 168-69; see, e.g., U.S. v. Preston, 910 F.2d 81, 89 n. 10 (3d Cir. 1990)(noting that Holloway applies when a court fails to investigate an actual conflict of interest despite the defendants' timely objection to multiple representation, and that

---

[2]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams, 529 U.S. at 400 (Justice O'Connor concurring).

Cuyler applies when a potential conflict of interest is involved).

Consequently, the issue is whether the potential conflict had an adverse effect on Mr. Facciolo's representation during the sentencing hearing. See Mickens, 535 U.S. at 168-69; U.S. v. Preston, 910 F.2d 81, 89 n. 10 (3d Cir. 1990). Petitioner was sentenced to forty-eight (48) years incarceration at Level V, and petitioner's submissions to the court indicate that he believes he should have been sentenced to fourteen (14) years, the minimum mandatory penalty. Petitioner complains that counsel failed to "argue any mitigating factors" of a physician's psychological assessment of petitioner out of concern for the victim's family. He also insinuates that the conflict of interest prevented counsel from advising petitioner to make a statement regarding his state of mind during the day of the murder, and that the conflict of interest prevented counsel from filing a motion to reduce the sentence based on petitioner's substantial assistance to the prosecution. (D.I. 2, at 12-13)

The record contradicts petitioner's allegations. Mr. Facciolo did not know Ms. Pizzaro personally and, once he realized the relationship between Ms. Pizarro and his acquaintance (Ms. Pizarro's mother), Mr. Facciolo met with petitioner a total of three times to discuss the new situation. Mr. Facciolo explained the meaning of a conflict of interest to

the petitioner. Nevertheless, petitioner did not object to Mr. Facciolo's continued representation. In fact, during the sentencing hearing, petitioner even complimented both defense attorneys. He stated:

> I would like to also thank my lawyers who have did [sic] the very best job in representing me, and the attentiveness they have been giving my case. Not only do you become friends, you have formed a loving relationship. Thank you for being there for me, my friend. You have been support.

(D.I. 13, State's App. in Melendez v. State, No.21,2004, at B-28)

Further, the sentencing transcript includes eleven pages wherein Mr. Facciolo repeatedly and zealously discussed petitioner's remorse, numerous mitigating factors mentioned in the psychological assessment, and petitioner's substantial assistance in identifying other individuals involved in planning the murder. (D.I. 13, State's App. in Melendez v. State, No.21,2004, at B-25) Additionally, Mr. Facciola explicitly requested the sentencing court to impose the minimum mandatory sentence and to consider the "mitigation to be serious and to outweigh any aggravators." Id. at B-26.

Petitioner also contends that Mr. Facciolo never advised him to discuss his state of mind on the day of the murder. Petitioner does not explain what he means by "state of mind." To the extent he means that he was high when he committed the murder, the transcript reveals that petitioner did, in fact, refer to his use of drugs in his statement to the sentencing

14

court. Id. at B-29. Additionally, after recounting the numerous factors demonstrating petitioner's pre-meditation, the Superior Court judge referred to the fact that petitioner "got high" before shooting Mercado, and noted that petitioner "did not lack the substantial capacity for judgment on this day or on the days or months before. Every indication shows the capacity to carefully, meticulously plan the murder and avoid getting caught." Id. at B-31.

Accordingly, the court concludes that, even if a potential conflict of interest existed, it did not adversely affect Mr. Facciola's representation of petitioner during sentencing. The record demonstrates that Mr. Facciolo zealously represented petitioner during the sentencing hearing. Accordingly, petitioner's claim that his sentence should be reversed due to the sentencing court's failure to inquire into the conflict is dismissed as meritless.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial

15

of a constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief. Reasonable jurists would not find these conclusions unreasonable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.